ROBERT A. MULLENDORE, APPELLEE AND CROSS-APPELLANT, V.
· RICHARD NUERNBERGER, COUNTY TREASURER OF LANCASTER
COUNTY, NEBRASKA, ET AL., APPELLANTS AND CROSS-APPELLEES.

434 N.W.2d 511

Filed January 20, 1989.   No. 87-426.

James B. Gessford, of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., and Douglas D. Cyr, Deputy Lancaster County Attorney, for appellants.

John F. Recknor, of Barlow, Johnson, DeMars & Flodman, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In his declaratory judgment action filed during 1983 in the district court for Lancaster County, Robert A. Mullendore sought a declaration that Neb. Rev. Stat. § 79-4,102 (Cum. Supp. 1982), also identified as 1982 Neb. Laws, L.B. 933, was unconstitutional. The statute in question contained a formula and factors for determination of nonresident high school tuition rates and a corresponding tax levy.

In his amended petition, Mullendore alleged that the statutory scheme in L.B. 933 was a violation of certain provisions of the Nebraska Constitution, namely, an invalid delegation of legislative authority to the receiving school districts and the Nebraska Department of Education in violation of article II, § 1 (separation of powers), and article III, § 1 (legislative authority vested in Legislature); an improper tax measure in contravention of article VIII, § 1 (revenue by taxation), and § 4 (prohibition against remission of taxes); and noncompliance with article III, § 14 (one subject in a legislative bill), relative to enactment of L.B. 933. ·

In July of 1984, more than 1 year after Mullendore had filed his petition, the Legislature repealed the 1982 version of § 79-4,102 (L.B. 933) and replaced the repealed legislation with what was subsequently codified as § 79-4,102 (Cum. Supp. 1984). After repeal of L.B. 933, the defendant school districts filed a motion for summary judgment, alleging that repeal of L.B. 933 rendered Mullendore's questions moot. ·After the district court granted summary judgment to the school districts, Mullendore appealed. In the initial appeal of this case, *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986) (*Mullendore I*), we determined that the district court had incorrectly sustained the motion for summary judgment and held that Mullendore's action was not moot at that time, when we noted:

> Although Mullendore has alleged that the school districts had certified tuition rates pursuant to L.B. 933, the record does not conclusively establish that taxes authorized by

L.B. 933 have been collected from Mullendore and other resident taxpayers of the school districts. Mullendore's amended petition, considered by the district court in connection with the motion for summary judgment, see Neb. Rev. Stat. § 25-1332 (Reissue 1985), provides a reasonable inference that taxes have been levied under L.B. 933 against the property of Mullendore and other resident taxpayers of the school districts. If taxes levied against the property of resident taxpayers have been paid, a declaration of unconstitutionality would resolve a real or actual controversy between the school districts and their resident taxpayers. *On the assumption that taxes have been collected*, an action for declaratory judgment is not moot, since a declaration of unconstitutionality may entitle an individual taxpayer to a refund of taxes paid. . . .

. . . .

The record before us raises a question of fact regarding the viability of an action for declaratory judgment, which question underlies the substantive constitutional claims asserted by Mullendore. The school districts' introduction of a copy of [§ 79-4,102], repealing its predecessor, L.B. 933, did not satisfy the burden of showing that no viable cause of action survived repeal of L.B. 933. The district court erred in summarily dismissing Mullendore's action for declaratory judgment.

(Emphasis supplied.) *Mullendore I*, 223 Neb. at 37-38, 388 N.W.2d at 100-01. Therefore, we reversed the district court's decision as erroneous in the determination that Mullendore's claim was moot and remanded the cause for further proceedings.

A brief summary of L.B. 933 is found in our opinion rendered in *Mullendore I*, 223 Neb. at 30, 388 N.W.2d at 96:

L.B. 933, which became effective on July 1, 1982, was enacted as part of a statutory scheme for computing and allocating nonresident high school tuition rates. Under such scheme the parent or guardian of any high school age pupil residing in a school district which does not maintain a high school grade [a "Class I" or "sending school district"] may apply for nonresident high school tuition

privileges to districts maintaining such grade [a "receiving school district"]. [Citations omitted.] By L.B. 933, a school district which decided to receive nonresident high school pupils computed a nonresident tuition rate and certified that rate to the superintendent of the county where the pupils resided. L.B. 933 allowed a receiving school district to set the high school tuition rate on a "uniform taxation basis." The rate to be certified by a receiving school district was "any amount decided by the receiving board but not less than the per pupil cost [nor more than] one hundred twenty-five per cent of the computed rate." Eventually the board of equalization for the resident county levied a tax on "the actual value of all the taxable property" in the county, which taxes are collectible by the county treasurer and distributable to the receiving school districts.

On remand, the parties stipulated that the case be tried solely on evidence contained in certain exhibits received at trial on December 12, 1986. These exhibits included various versions of L.B. 933, as it evolved during the 1982 legislative session, and the appropriate parts of the legislative history for the bill. The evidence also included a list of property owners in Lancaster County, indicating individuals who owned property in Class I (or "sending") school districts within the county. Mullendore was listed as a property owner in a Class I school district.

The district court interpreted our opinion in *Mullendore I* to the effect that constitutionality of L.B. 933 was "a valid issue even though repealed by the passage of [§ 79-4,102] in 1984." The court then found that L.B. 933 contained an unconstitutional delegation of legislative authority in violation of article II, § 1, and article III, § 1, of the Nebraska Constitution and that the bill contained more than one subject contrary to article III, § 14, of the Nebraska Constitution. As a result of those findings, the district court declared L.B. 933 (§ 79-4,102 (Cum. Supp. 1982)) unconstitutional.

The school districts contend that the district court erred in (1) failing to determine that the matter was moot; (2) determining that Mullendore was entitled to declaratory relief; (3) finding that Mullendore had presented a prima facie case entitling him

to declaratory relief; and (4) determining that Mullendore had standing to assert his claims. The school districts also contend that the district court's determination of the substantive constitutional issues is erroneous. Mullendore cross-appeals, claiming that the district court should have added one more ground for declaring L.B. 933 unconstitutional, namely, passage of the bill violated article III, § 14, of the Nebraska Constitution insofar as the bill was passed within 5 days of its introduction.

Mullendore brought his action under Nebraska's Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985), which includes: "Any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." § 25-21,150.

Certain requirements must be satisfied as conditions precedent to obtaining declaratory relief.

The remedy of declaratory judgment may be available to a litigant when a controversy exists as a result of a claim asserted against one who has an interest in contesting such claim, the controversy is between persons whose interests are adverse, the party seeking declaratory relief has a legally protectable interest or right in the subject matter of the controversy, and the issue involved is capable of present judicial determination.

*Mullendore v. School Dist. No. 1*, 223 Neb. 28, 33, 388 N.W.2d 93, 98 (1986). See, also, *Slosburg v. City of Omaha*, 183 Neb. 839, 165 N.W.2d 90 (1969); *Nebraska Seedsmen Assn. v. Department of Agriculture & Inspection*, 162 Neb. 781, 77 N.W.2d 464 (1956); *Schroder v. City of Lincoln*, 155 Neb. 599, 52 N.W.2d 808 (1952).

While not a constitutional prerequisite for jurisdiction of courts of the State of Nebraska (cf. U.S. Const. art. III, § 2), existence of an actual case or controversy, nevertheless, is necessary for the exercise of judicial power in Nebraska. See *In re Estate of West*, 226 Neb. 813, 830, 415 N.W.2d 769, 781 (1987) (" ' "The province of a court is to decide real controversies and to determine rights actually controverted . . . ." ' ").

The "case or controversy" prerequisite to maintain litigation applies with equal, if not stronger, force to an action for a declaratory judgment, since the right to maintain the action is expressly granted only to those "person[s] . . . whose rights, status or other legal relations are affected by a statute." § 25-21,150.

> In order to maintain an action for declaratory judgment under the provisions of [§ 25-21,149], there must be an actual controversy. It cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain. There must, at the time that the declaration is sought, be an actual justiciable issue.

*Allstate Ins. Co. v. Novak*, 210 Neb. 184, 188, 313 N.W.2d 636, 638-39 (1981). The Uniform Declaratory Judgments Act is applicable when a present actual controversy exists and all interested persons are parties to the proceedings, and then only when a justiciable issue exists for resolution. *Graham v. Beauchamp*, 154 Neb. 889, 50 N.W.2d 104 (1951).

For purposes of determining whether a litigant is entitled to declaratory relief, existence of a controversy depends not only on the circumstances existing at the commencement of the action for a declaratory judgment but also the circumstances existing when the judgment is granted. See, *Golden v. Zwickler*, 394 U.S. 103, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969); *Caldwell v. Gurley Refining Co.*, 755 F.2d 645 (8th Cir. 1985). As any other lawsuit, a declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. *Mullendore I, supra.* As the U.S. Supreme Court has noted, the doctrine of mootness is " 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980) (quoting Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363 (1973)).

Consequently, standing and mootness are key functions in determining whether a justiciable controversy exists, or

whether a litigant has a sufficient interest in a case to warrant declaratory relief. "In order to maintain an action to enforce private rights the plaintiff must show that he will be benefited by the relief to be granted." *Stahmer v. Marsh*, 202 Neb. 281, 284, 275 N.W.2d 64, 66 (1979). See, 22A Am. Jur. 2d *Declaratory Judgments* § 231 at 872 (1988): "Clearly, the plaintiff must show that conditions exist which justify the court's exercise of its discretionary power to grant declaratory relief. Thus the plaintiff has the burden of establishing the existence of an actual controversy . . . "; *Arens v. Village of Rogers*, 240 Minn. 386, 61 N.W.2d 508 (1953); *City of Miami Beach v. New Floridian Hotel, Inc.*, 324 So. 2d 715 (Fla. App. 1976); *Luby v. City of Corpus Christi*, 540 S.W.2d 805 (Tex. Civ. App. 1976). See, also, *Golden v. Zwickler, supra*, 394 U.S. at 110 (plaintiff who "did not establish the existence at the time of the hearing . . . the elements governing the issuance of a declaratory judgment" could not succeed). Thus, to obtain declaratory relief, a plaintiff has the burden to prove the existence of a justiciable controversy and an interest in the subject matter of the action.

Therefore, a plaintiff in a declaratory judgment action challenging the validity of a statute must prove that the plaintiff is a person "whose rights, status or other legal relations are affected" by the challenged statute. See § 25-21,150.

The statutory duties of the public officials mentioned in L.B. 933 existed only when a Class I school district found it necessary to send its high-school-age students to a larger district with a high school. In other words, the tax scheme of L.B. 933 was activated only when a sending district needed to send, and a receiving district decided to receive, high school students. It is entirely possible that, in any given year, a Class I school district may not need to send any students to another school district. It is equally plausible that a prospective receiving school district may reject applications concerning nonresident students seeking to enroll in the receiving district's high school. The statutory duties of certifying a nonresident tuition rate, see § 79-4,102(2) (Cum. Supp. 1982), and the consequent tax levy pursuant to L.B. 933 are, therefore, conditioned on sending and receiving high school students of different school districts.

Mullendore failed to show that any resident students of his school district were sent to another district while L.B. 933 existed and was operative. Without this proof, it is impossible to tell whether the amount of nonresident tuition was certified for taxation and whether any taxes were ever levied on Mullendore's property pursuant to L.B. 933. Therefore, whatever interest Mullendore may have had to support his contesting the validity of L.B. 933 at the time he filed his lawsuit, which was commenced while L.B. 933 was still in effect, repeal of the statute (L.B. 933) removed the possibility that any future tax would be levied against Mullendore's property pursuant to L.B. 933.

Given the 1984 repeal of L.B. 933 (§ 79-4,102 (Cum. Supp. 1982)) and Mullendore's failure to prove any adverse impact on him during the existence of the statute in question, we conclude that Mullendore has failed to establish the existence of a justiciable controversy, and has failed to prove that he is a "person . . . whose rights, status or other legal relations are affected by a statute . . . ." § 25-21,150. Thus, Mullendore has failed to establish a prima facie case entitling him to declaratory relief. Because Mullendore failed to establish that he was entitled to declaratory relief, the district court should not have decided the substantive constitutional issues. Therefore, we need not consider whether the district court's judgment on the constitutional issues is correct. In view of our conclusion that Mullendore did not establish that he was entitled to declaratory relief, resolution of the question raised on Mullendore's cross-appeal is unnecessary, inasmuch as Mullendore's appellate question relates to the nature of declaratory relief, which is unavailable to Mullendore.

Inasmuch as Mullendore has failed to factually establish that a case or controversy existed at the time of the trial and declaratory judgment involved in this appeal, we reverse the district court's judgment declaring L.B. 933 (§ 79-4,102 (Cum. Supp. 1982)) unconstitutional and remand this matter to the district court with direction to dismiss Mullendore's petition.

REVERSED AND REMANDED WITH DIRECTION.